Exhibit B

08/30 SEP. 28. 2001 F11:48AM 285 1879       C H W                    NO. NO. 8169-p   P. 2

AUG. 30. 2001   9:24AM

## U.S. Clearing
A Division of Fleet Financial
Member New York Stock Exchange, Inc.

MARGIN AGREEMENT

Ultimate Holdings

A/C No. 944-37845-18-007

**TO: U.S. CLEARING AND,
TO THE INTRODUCING BROKER (MY BROKER)**

1. I agree as follows with respect to the margin account I have opened with you for the purchase and sale of securities and/or the borrowing of funds.

2. I am of legal age and no one except the undersigned has any interest in this account.

3. All transactions for my account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, where executed.

4. Any and all securities or commodities or contracts relating thereto and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my account shall be subject to a general lien for the discharge of my obligations to you, however arising and without regard to whether or not you have made advances with respect to such property, and without notice to me may be carried in your general loans and loaned or pledged, re-pledged, hypothecated or rehypothecated, separately or in common with other securities and commodities of any other property, and the sum due to you thereon or for a greater sum and without reducing in your possession and control for delivery a like amount of similar securities or commodities or other property.

5. I will maintain such margins as you may in your discretion require from time to time and will pay on demand any debit balances owing with respect to any of my accounts and I will, in your account from time to time, deposit such additional collateral as may be required by the rules of any exchange or regulatory agency or as may be considered necessary or appropriate. In your discretion, to insure my obligations to you. You may, whenever in your discretion you consider it necessary for your protection, sell any or all securities or commodities or contracts relating thereto held in any of my accounts, including any long positions, and you may borrow or buy in any securities or commodities required to make delivery against any such short positions. Such sale or purchase may be public or private and may be made without advertising or notice to me and in such manner as you may in your discretion determine and at any such sale you may purchase the property free from any right of redemption and I shall be liable for any deficiency.

6. I agree to pay interest and service charges upon my account monthly at the prevailing rate as determined by you. The interest charged on the average debit balances appears on the monthly statement and indicates rate and period covered. The rate may change from time to time without notice due to fluctuations in money market rates or from other causes, is computed by the ordinary interest method, which assumes a year to have 360 days. The actual number of days within the period is used as the numerator.

7. I agree that, in giving orders to sell, all "short" sale orders will be designated as "short", and all "long" sale orders will be designated as "long," and that the designation of a sell order as "long" is a representation on my part that I own the security, and if the security is not in your possession, that it is then impracticable to deliver the security to you forthwith and that I will deliver it as soon as possible.

8. Reports of the execution of orders and statements of my account shall be conclusive if not objected to within five days and for days, respectively, after transmittal to me by mail or otherwise.

9. At any time and from time to time you may, in your discretion, without notice to me, apply and/or transfer any securities, commodities, contracts relating thereto, or any other property of mine from any of my accounts, interchangeably between any of my accounts, whenever individual or joint from any of my accounts to any account guaranteed by me.

10. This agreement shall inure to the benefit of your successors and assigns, shall be binding on the undersigned, his heirs, executors, administrators and assigns, and shall be governed by the laws of the State of New York.

**11. AGREEMENT TO ARBITRATE ALL CONTROVERSIES**

I represent that I understand the terms of the arbitration clause, as follows:

(a) Arbitration is final and binding on the parties.

(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.

(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.

(d) The arbitrators' award is not required to include factual findings of legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted before the New York Stock Exchange, Inc. ("NYSE") or the National Association of Securities Dealers, Inc. ("NASD"), and in accordance with the rules then in force. I may elect in the first instance whether arbitration shall be conducted before the NYSE or the NASD, but if I fail to make such election, then you may make such election. Judgment upon the award of arbitrators may receipt of a written request from you to make such election, then you may make such election. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.

12. Class-action matters are excluded from arbitration proceedings conducted by NASD. Therefore, it is further agreed that the parties to this agreement shall not bring a putative or certified class-action to arbitration nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class-action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

13. I authorize U.S. Clearing to obtain a consumer report at the time of application to verify my creditworthiness and to obtain a consumer report from time to time to update, renewal, extension, and collection activity on any approved account. Upon my written request, U.S. Clearing will disclose to me whether it obtained a report, and if so, the name and address of the consumer-reporting agency that provided it. In the event that my account is denied, as a result of the consumer report verification, I authorize U.S. Clearing to provide to my introducing broker the reason(s) for such denial.

**LENDING AGREEMENT**

14. You and any firm succeeding to your firm are hereby authorized from time to time separately or together with the property of others either in your name or in the name of any other property which you may be carrying for me on margin. This authorization shall apply to all accounts carried by you for me and shall remain in full force and until written notice or revocation is received by you at your principal office in New York.

**BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THE FOLLOWING: (1) THAT, IN ACCORDANCE WITH PARAGRAPH #11 I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH YOU, AND (2) RECEIPT OF A COPY OF THIS AGREEMENT.**

_Colette Johnston_

_Colette Johnston_                                           (signature of co-applicant)
(signature of applicant)

Date _08/30/01_                                              Date

US 1510 (Rev. 11/00)

Part One - N.Y. Office          Part Two - Customer

SEP. 28. 2001 11:48AM 295 1879
AUG. 31. 2001 2:19PM 218 848 1718
USC NEW ACCOUNTS

NCNO. 8169 P. P. 3

**U.S. Clearing**
CORP.
Member New York Stock Exchange, Inc.

## INSTITUTIONAL NEW ACCOUNT APPLICATION
### FOR ALL DVP/RVP ACCOUNTS

DATE A/C OPENED

PLEASE PRINT
OR TYPE

A/C #: 944-70000-93-007

Tax ID #: EXEMPT - BERMUDA Company

**CUSTOMER INFORMATION**

CUSTOMER NAME(S) OR FULL TITLE(S) Attention line, address

ULTIMATE Holdings LTD
Attn: Colette Johnston
18 PARLIAMENT STREET
HAMILTON HM12
BERMUDA

Name of contact at Customer: Colette Johnston

Phone #: 441-294-1535

Alert Acronym:

Access Code:

Signature of Account Executive: Colette Johnston

Correspondent of Mgr.: H. W Colby Jr

**DELIVERY INST.**

**INSTITUTIONAL DELIVERY (ID) SYSTEM**

Institutional ID #: 89331

DTC Clearing #: 0234

Agent Bank/Broker Name: Chase Manhattan Bank

INTERESTED PARTY CONFIRMS VIA ID SYSTEM

[1] Name

Agent Bank ID #: 89331
Agent Bank Internal Account #: 11351632

PHYSICAL DELIVERY INST. (NON-ID, RECS.)

BAS #            CUST #

[2] Name

Name & Address of Clearing Agent

BAS #            CUST #

[3] Name

BAS #            CUST #

**DUPLICATE MAILINGS**

[1]  ☐ confirm   ☐ statement

**DUPLICATE MAILINGS**

[2]  ☐ confirm   ☐ statement

SEP. 28. 2001 (11:48AM)    NO. B169    P. 4
NO. B169 17  P. 2

## BEAR, STEARNS SECURITIES CORP.                    REPORT OF NEW ACCOUNT

6 133784-19-008

**CUSTOMER'S NAME IN FULL**
ULTIMATE HOLDINGS LTD

**SOCIAL SECURITY NO./TAX I.D.** /BENEFICIAL OWNER/
ADNAN KHASOGGI

**BUSINESS ADDRESS** (Company)                    **BUSINESS PHONE**
TURNER HOUSE 18 PARLIAMENT STREET
HAMILTON HM 12 BERMUDA

**HOME ADDRESS**                    **HOME PHONE**

**TYPE OR ENTITY (MUST CHECK ONE)**

A. INDIVIDUAL
B. JOINT
C. PARTNERSHIP
D. CORPORATION    ✓
E. TESTAMENTARY TRUST
F. OTHER (SPECIFY)

G. SOLE OWNERSHIP
H. BANK OR TRUST CO.
I. INSURANCE CO.
J. STATE AGENCY
K. BROKER-DEALER
L. ESTATE

M. INVESTMENT CLUB
N. TRUST
O. MUTUAL FUND
P. HEDGE FUND
Q. IRA (see back)
R. KEOGH (see back)

**APPROX. ANNUAL INCOME**    **APPROX. NET WORTH**    **INVESTMENT OBJECTIVE**

**EMPLOYED BY AND OR NATURE OF BUSINESS**    **POSITION OR OCCUPATION**
INVESTMENT HOLDING COMPANY (PRIVATE)

**IS CUSTOMER EMPLOYED BY A MEMBER FIRM?** YES ☐ NO ☐
**APPROXIMATE AGE OF CUSTOMER**    **INTRODUCED TO AE BY**
**AE KNOWN HOW LONG?**    **IS AE RELATED?** YES ☐ NO ☐    **STATE RELATIONSHIP** None
**MARITAL STATUS**    **MARRIED ☐    SINGLE ☐    SPOUSE'S OCCUPATION**

**BANK AND OTHER REFERENCES**    **DOES CUSTOMER HAVE OTHER ACCOUNTS WITH US?** YES ☐ NO ☐
**SPECIFY ACCOUNT NO.**

**ACCOUNT WILL BE TRADING –**    CASH ☒    MARGIN ☐    COMMODITY ☐

**IF ACCOUNT IS HANDLED BY AN INVESTMENT ADVISOR, PLEASE PROVIDE NAME & ADDRESS OF ADVISOR**

**IF OTHER THAN AN INDIVIDUAL OR JOINT ACCOUNT, INDICATE PERSON AUTHORIZED TO ENTER ORDERS AND ISSUE INSTRUCTIONS:**
ERNEST MORRISON, GAIL CHING    **TITLE** DIRECTOR L
ERLAIN
**INITIAL TRANSACTION**    **DEPOSIT**
**SECURITY**    **NO. SHARES**    **NO. DEPOSIT**
**REASON FOR WAIVE OR DEPOSIT**

**IF AE HAS TRADING AUTHORITY, CHECK HERE** ☐    **AE NAME**

**STATE NAME AND RELATIONSHIP OF ANY THIRD PARTY (OTHER THAN AE HOLDING) TRADING AUTHORIZATION –**

**IF THEY ARE EMPLOYED BY A MEMBER FIRM, STATE NAME OF FIRM**
**TRADING AUTHORIZATION WILL BE**    LIMITED ☐    GEN. PWR. OF ATT'Y ☐

**AE REGISTERED IN CUSTOMER'S STATE OF RESIDENCE?**    **HAVE YOU SENT FORMS TO CUSTOMER?**
YES ☐ NO ☐    YES ☐ NO ☐

**AE SIGNATURE**    **TELEPHONE EXT.**    **DATE**    **SUPERVISOR'S SIGNATURE**    **DATE**
E. Mohr

**MANAGING DIRECTOR/PRINCIPAL'S SIGNATURE**    **DATE**

GLENE JOHNSTON
(SECRETARY)

3000-BS 315501 (5-69)                    BEAR STEARNS-N.Y.

**U.S. Clearing**
*A Division of Fleet Financial*
Member New York Stock Exchange, Inc.

## MARGIN AGREEMENT

TO: U.S. CLEARING AND,                                                   A/C No. _____
TO: THE INTRODUCING BROKER (MY BROKER)

1.   I agree as follows with respect to the margin account I have opened with you for the purchase and sale of securities and/or the borrowing of funds.

2.   I am of legal age and no one except the undersigned has any interest in this account.

3.   All transactions for my account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market (and its clearing house, if any) where executed.

4.   Any and all securities or commodities or contracts relating thereto and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my account shall be subject to a general lien for the discharge of my obligations to you, however arising and without regard to whether or not you have made advances with respect to such property, and without notice to me may be carried in your general loans and may be pledged, re-pledged, hypothecated or re-hypothecated, separately or in common with other securities and commodities of any other property, for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount of similar securities, commodities or other property.

5.   I will maintain such margins as you may in your discretion require from time to time and will pay on demand any debit balance owing with respect to any of my accounts and I will, at your request from time to time, deposit such additional collateral as may be required by the rules of any exchange or regulatory agency or as may be considered necessary or appropriate, in your discretion, to secure my obligations to you. You may, whenever in your discretion you consider it necessary for your protection, sell any or all securities or commodities or contracts relating thereto held in any of my accounts, including safekeeping accounts, and you may borrow or buy in any securities or commodities required to make delivery against any sale effected for me. Such sale or purchase may be public or private and may be made without advertising or notice to me and in such manner as you may in your discretion determine and at any such sale you may purchase the property free from any right of redemption and I shall be liable for any deficiency.

6.   I agree to pay interest and service charges upon my account monthly at the prevailing rate as determined by you. The interest charged on the average debit balances appears on the monthly statement and indicates rate and period covered. The rate may change from time to time without notice due to fluctuations in money market rates or from other causes. It is computed by the ordinary interest method, which assumes a year to have 360 days. The actual number of days within the period is used as the numerator.

7.   I agree that, in giving orders to sell, all "short" sale orders will be designated as "short," and all "long" sale orders will be designated as "long," and that the designation of a sell order as "long" is a representation on my part that I own the security, and if the security is not in your possession, that it is then impracticable to deliver the security to you forthwith and that I will deliver it as soon as possible.

8.   Reports of the execution of orders and statements of my account shall be conclusive if not objected within five days and ten days, respectively, after transmittal to me by mail or otherwise.

9.   At any time and from time to time you may, in your discretion, without notice to me, apply and/or transfer any securities, commodities, contracts relating thereto, or any other property or equity therein, interchangeably between any of my accounts, whether individual or joint from any of my accounts to any account guaranteed by me.

10.  This agreement shall inure to the benefit of your successors and assigns, shall be binding on the undersigned, his heirs, executors, administrators and assigns, and shall be governed by the laws of the State of New York.

11.  **AGREEMENT TO ARBITRATE ALL CONTROVERSIES**

I represent that I understand the terms of the arbitration clause, as follows:
   (a)  Arbitration is final and binding on the parties.
   (b)  The parties are waiving their right to seek remedies in court, including the right to jury trial.
   (c)  Pre-arbitration discovery is generally more limited than and different from court proceedings.
   (d)  The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
   (e)  The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted before the New York Stock Exchange, Inc. ("NYSE") or the National Association of Securities Dealers, Inc. ("NASD"), and in accordance with its rules then in force. I may elect in the first instance whether arbitration shall be conducted before the NYSE or the NASD, but if I fail to make such election, by registered letter or telegram addressed to you at your main office, before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.

12.  Class-action matters are excluded from arbitration proceedings conducted by NASD. Therefore, it is further agreed that the parties to this agreement shall not bring a putative or certified class-action to arbitration, nor seek to enforce any pre-disputed arbitration agreement against any person who has initiated a court a putative class-action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any right under this agreement except to the extent stated herein.

13.  I authorize U.S. Clearing to obtain a consumer report at the time of application to verify my creditworthiness

...ze Authorize U.S. Clearing to obtain a consumer report at the time of application to verify my creditworthiness and to obtain a consumer report from time to time for updates, renewals, extensions, and collection activity on any approved account. Upon my written request, U.S. Clearing will disclose to me whether it obtained a report, and if so, the name and address of the consumer-reporting agency that provided it. In the event that my account is denied, as a result of the consumer report verification, I authorize U.S. Clearing to provide to my introducing broker the reason(s) for such denial.

## LENDING AGREEMENT

14. You and any firm succeeding to your firm are hereby authorized from time to lend separately or together with the property of others either to yourselves or to others any property which you may be carrying for me on margin. This authorization shall apply to all accounts carried by you for me and shall remain in full force until written notice or revocation is received by you at your principal office in New York.

BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THE FOLLOWING: (1) THAT, IN ACCORDANCE WITH PARAGRAPH #11 I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH YOU, AND (2) RECEIPT OF A COPY OF THIS AGREEMENT.


_____          _____
            (applicant's signature)                                (signature of co-applicant)


Date _____             Date _____

US 101C (Rev. 11/00)                 Part One - N.Y. Office     Part Two - Customer