Exhibit B

08/30 SEP. 28. 2001 11:48AM 285 1879 C H W NO. 8169 P. 2
AUG. 30. 2001 9:24AM

US Clearing
A Division of Fleet Financial
Member New York Stock Exchange, Inc.

Ultimate Holdings

# MARGIN AGREEMENT

A/C No. 944-37845-18-007

TO: U.S. CLEARING AND,
TO: THE INTRODUCING BROKER (MY BROKER)

1. I agree as follows with respect to the margin account I have opened with you for the purchase and sale of securities and/or the borrowing of funds.

2. I am of legal age and no one except the undersigned has any interest in this account.

3. All transactions for my account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market (and its clearing house, if any) where executed.

4. Any and all securities or commodities or contracts relating thereto and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my account shall be subject to a general lien for the discharge of my obligations to you, however arising and without regard to whether or not you have made advances with respect to such property, and without notice to me may be carried in your general loans and may be pledged, re-pledged, hypothecated or re-hypothecated, separately or in common with other securities and commodities of any other property for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount of similar securities, commodities or other property.

5. I will maintain such margins as you may in your discretion require from time to time and will pay on demand any debit balance owing with respect to any of my accounts and I will, at your request from time to time, deposit such additional collateral as may be required by the rules of any exchange or regulatory agency or as may be considered necessary or appropriate, in your discretion, to secure my obligations to you. You may, whenever in your discretion you consider it necessary for your protection, sell any or all securities or commodities or contracts relating thereto held in any of my accounts, including safekeeping accounts, and you may borrow or buy in any securities or commodities required to make delivery against any sale effected for me. Such sale or purchase may be public or private and may be made without advertising or notice to me and in such manner as you may in your discretion determine and at any such sale you may purchase the property free from any right of redemption and I shall be liable for any deficiency.

6. I agree to pay interest and service charges upon my account monthly at the prevailing rate as determined by you. The interest charges on the average debit balance appears on the monthly statement and indicates rate and period covered. The rate may change from time to time without notice due to fluctuations in money market rates or from other causes. It is computed by the ordinary interest method, which assumes a year to have 360 days. The actual number of days within the period is used as the numerator.

7. I agree that, in giving orders to sell, all "short" sale orders will be designated as "short," and all "long" sale orders will be designated as "long," and that the designation of a sell order as "long" is a representation on my part that I own the security, and if the security is not in your possession, that it is then impracticable to deliver the security to you forthwith and that I will deliver it as soon as possible.

8. Reports of the execution of orders and statements of my account shall be conclusive if not objected to within five days and ten days, respectively, after transmittal to me by mail or otherwise.

9. At any time and from time to time you may, in your discretion, without notice to me, apply and/or transfer any securities, commodities, contracts relating thereto, or any other property or equity therein, interchangeably between any of my accounts, whether individual or joint from any of my accounts to any account guaranteed by me.

10. This agreement shall inure to the benefit of your successors and assigns, shall be binding on the undersigned, his heirs, executors, administrators and assigns, and shall be governed by the laws of the State of New York.

11. AGREEMENT TO ARBITRATE ALL CONTROVERSIES

I represent that I understand the terms of the arbitration clause, as follows:

(a) Arbitration is final and binding on the parties.
(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.
(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.
(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted before the New York Stock Exchange, Inc. ("NYSE") or the National Association of Securities Dealers, Inc. ("NASD"), and in accordance with the rules then in force. I may elect in the first instance whether arbitration shall be conducted before the NYSE or the NASD, but if I fail to make such election, by registered letter or telegram addressed to you at your main office, before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.

12. Class-action matters are excluded from arbitration proceedings conducted by NASD. Therefore, it is further agreed that the parties to this agreement shall not bring a putative or certified class-action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class-action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

13. I authorize U.S. Clearing to obtain a consumer report at the time of application to verify my creditworthiness and to obtain a consumer report from time to time for updates, renewals, extensions, and collection activity on any approved account. Upon my written request, U.S. Clearing will disclose to me whether it obtained a report, and if so, the name and address of the consumer reporting agency that provided it. In the event that my account is denied, as a result of the consumer report verification, I authorize U.S. Clearing to provide to my introducing broker the reason(s) for such denial.

## LENDING AGREEMENT

14. You and any firm succeeding to your firm are hereby authorized from time to lend separately or together with the property of others either to yourselves or to others any property which you may be carrying for me on margin. This authorization shall apply to all accounts carried by you for me and shall remain in full force until written notice of revocation is received by you at your principal office in New York.

BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THE FOLLOWING: (1) THAT, IN ACCORDANCE WITH PARAGRAPH #11 I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH YOU, AND (2) RECEIPT OF A COPY OF THIS AGREEMENT.

Colette Johnston

[signature] ____________________ (customer's signature) ____________________ (signature of co-applicant)

Date 08/30/01 Date ____________________

US 1310 (Rev. 11/00) Part One - N.Y. Office Part Two - Customer

SEP. 28. 2001 11:48AM 295 1578 NO. 8169 P. 3
AUG. 31. 2001 2:19PM 212 848 1719 USC NEW ACCOUNTS

**U.S. Clearing CORP.** Member New York Stock Exchange, Inc.

# INSTITUTIONAL NEW ACCOUNT APPLICATION

FOR ALL DVP/RVP ACCOUNTS

DATE A/C OPENED

PLEASE PRINT OR TYPE

A/C #: 944-70000-93-007

Tax ID #: EXEMPT - BERMUDA Company

CUSTOMER NAME(S) OR FULL TITLE(S) Attention line, address

ULTIMATE Holdings LTD
Attn: Colette Johnston
18 PARLIAMENT STREET
HAMILTON HM12
BERMUDA

## CUSTOMER INFORMATION

Name of contact at Customer: COLETTE JOHNSTON

Phone #: 441-294-1535

Alert Acronym:

Access Code:

Signature of Account Executive: Colette Johnston

Correspondent or Mgr.: Att. W Cell

## INSTITUTIONAL DELIVERY (ID) SYSTEM

Institutional ID #: 89331

## DELIVERY INST.

DTC Clearing #: 0234

Agent Bank/Broker Name: Chase Manhattan Bank

Agent Bank ID#: 89331

Agent Bank Internal Account #: 11351632

## INTERESTED PARTY CONFIRMS VIA ID SYSTEM

1 Name

BAS # CUST #

2 Name

BAS # CUST #

3 Name

BAS # CUST #

## PHYSICAL DELIVERY INST. (NON-ELIG. SECS.)

Name & Address of Clearing Agent

## DUPLICATE MAILINGS

1 ☐ confirm ☐ statement

## DUPLICATE MAILINGS

2 ☐ confirm ☐ statement

SEP. 28. 2001 11:48AM NO. 8169 P. 4

6 13 37845-19-008

**BEAR, STEARNS SECURITIES CORP.** REPORT OF NEW ACCOUNT

CUSTOMER'S NAME IN FULL: ULTIMATE HOLDINGS LTD (COMPANY)

SOCIAL SECURITY NO./TAX ID: (BENEFICIAL OWNER: ADNAN KHASOGGI)

BUSINESS ADDRESS: TURNER HOUSE, 18 PARLIAMENT STREET, HAMILTON HM 12, BERMUDA

BUSINESS PHONE

HOME ADDRESS

HOME PHONE

TYPE OF ENTITY (MUST CHECK ONE)

| | | |
|---|---|---|
| A. INDIVIDUAL ☐ | G. SOLE OWNERSHIP ☐ | M. INVESTMENT CLUB ☐ |
| B. JOINT ☐ | H. BANK OR TRUST CO. ☐ | N. TRUST ☐ |
| C. PARTNERSHIP ☐ | I. INSURANCE CO. ☐ | O. MUTUAL FUND ☐ |
| D. CORPORATION ☑ | J. STATE AGENCY ☐ | P. HEDGE FUND ☐ |
| E. TESTAMENTARY TRUST ☐ | K. BROKER/DEALER ☐ | Q. IRA (see over) ☐ |
| F. OTHER (SPECIFY) ☐ | L. ESTATE ☐ | R. KEOGH (see over) ☐ |

APPROX. ANNUAL INCOME | APPROX. NET WORTH | INVESTMENT OBJECTIVE

EMPLOYED BY AND OR NATURE OF BUSINESS: INVESTMENT HOLDING Company (Private Co.)

POSITION OR OCCUPATION

IS CUSTOMER EMPLOYED BY A MEMBER FIRM? YES ☐ NO ☑

APPROXIMATE AGE OF CUSTOMER

INTRODUCED TO AE BY

AE KNOWN HOW LONG? IS AE RELATED? YES ☐ NO ☑ STATE RELATIONSHIP None

MARITAL STATUS MARRIED ☐ SINGLE ☐ SPOUSE'S OCCUPATION

BANK AND OTHER REFERENCES

DOES CUSTOMER HAVE OTHER ACCOUNTS WITH US? YES ☐ NO ☑ SPECIFY ACCOUNT NO.

ACCOUNT WILL BE TRADING - CASH ☑ MARGIN ☐ COMMODITY ☐

IF ACCOUNT IS HANDLED BY AN INVESTMENT ADVISOR, PLEASE PROVIDE NAME & ADDRESS OF ADVISOR

IF OTHER THAN AN INDIVIDUAL OR JOINT ACCOUNT INDICATE PERSON AUTHORIZED TO ENTER ORDERS AND ISSUE INSTRUCTIONS: Colette Johnston (Secretary), ERNEST MORRISON, Gail Ch[illegible] TITLE DIRECTOR, CHAIRMAN

INITIAL TRANSACTION DEPOSIT

SECURITY NO. SHARES NO. DEPOSIT

REASON FOR WAIVE OF DEPOSIT

IF AE HAS TRADING AUTHORITY, CHECK HERE ☐ AE NAME

STATE NAME AND RELATIONSHIP OF ANY THIRD PARTY (OTHER THAN AE HOLDING) TRADING AUTHORIZATION -

IF THEY ARE EMPLOYED BY A MEMBER FIRM, STATE NAME OF FIRM

TRADING AUTHORIZATION WILL BE LIMITED ☐ GENL PWR. OF ATTY ☐

AE REGISTERED IN CUSTOMER'S STATE OF RESIDENCE? YES ☐ NO ☐

HAVE YOU SENT FORMS TO CUSTOMER? YES ☐ NO ☐

AE SIGNATURE: E. Moll[illegible] TELEPHONE EXT. DATE

SUPERVISOR'S SIGNATURE DATE

MANAGING DIRECTOR/PRINCIPAL'S SIGNATURE DATE

3000-88 318501 (5-89)

BEAR STEARNS-N.Y.

U.S. Clearing
A Division of Fleet Financial
Member New York Stock Exchange, Inc.

# MARGIN AGREEMENT

TO: U.S. CLEARING AND,
TO: THE INTRODUCING BROKER (MY BROKER)

A/C No. ____________________

1. I agree as follows with respect to the margin account I have opened with you for the purchase and sale of securities and/or the borrowing of funds.

2. I am of legal age and no one except the undersigned has any interest in this account.

3. All transactions for my account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market (and its clearing house, if any) where executed.

4. Any and all securities or commodities or contracts relating thereto and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my account shall be subject to a general lien for the discharge of my obligations to you, however arising and without regard to whether or not you have made advances with respect to such property, and without notice to me may be carried in your general loans and may be pledged, re-pledged, hypothecated or re-hypothecated, separately or in common with other securities and commodities of any other property, for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount of similar securities, commodities or other property.

5. I will maintain such margins as you may in your discretion require from time to time and will pay on demand any debit balance owing with respect to any of my accounts and I will, at your request from time to time, deposit such additional collateral as may be required by the rules of any exchange or regulatory agency or as may be considered necessary or appropriate, in your discretion, to secure my obligations to you. You may, whenever in your discretion you consider it necessary for your protection, sell any or all securities or commodities or contracts relating thereto held in any of my accounts, including safekeeping accounts, and you may borrow or buy in any securities or commodities required to make delivery against any sale effected for me. Such sale or purchase may be public or private and may be made without advertising or notice to me and in such manner as you may in your discretion determine and at any such sale you may purchase the property free from any right of redemption and I shall be liable for any deficiency.

6. I agree to pay interest and service charges upon my account monthly at the prevailing rate as determined by you. The interest charged on the average debit balances appears on the monthly statement and indicates rate and period covered. The rate may change from time to time without notice due to fluctuations in money market rates or from other causes. It is computed by the ordinary interest method, which assumes a year to have 360 days. The actual number of days within the period is used as the numerator.

7. I agree that, in giving orders to sell, all "short" sale orders will be designated as "short," and all "long" sale orders will be designated as "long," and that the designation of a sell order as "long" is a representation on my part that I own the security, and if the security is not in your possession, that it is then impracticable to deliver the security to you forthwith and that I will deliver it as soon as possible.

8. Reports of the execution of orders and statements of my account shall be conclusive if not objected within five days and ten days, respectively, after transmittal to me by mail or otherwise.

9. At any time and from time to time you may, in your discretion, without notice to me, apply and/or transfer any securities, commodities, contracts relating thereto, or any other property or equity therein, interchangeably between any of my accounts, whether individual or joint from any of my accounts to any account guaranteed by me.

10. This agreement shall inure to the benefit of your successors and assigns, shall be binding on the undersigned, his heirs, executors, administrators and assigns, and shall be governed by the laws of the State of New York.

11. AGREEMENT TO ARBITRATE ALL CONTROVERSIES

**I represent that I understand the terms of the arbitration clause, as follows:**

**(a) Arbitration is final and binding on the parties.**
**(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.**
**(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.**
**(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.**
**(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

**The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted before the New York Stock Exchange, Inc. ("NYSE") or the National Association of Securities Dealers, Inc. ("NASD"), and in accordance with its rules then in force. I may elect in the first instance whether arbitration shall be conducted before the NYSE or the NASD, but if I fail to make such election, by registered letter or telegram addressed to you at your main office, before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.**

12. Class-action matters are excluded from arbitration proceedings conducted by NASD. Therefore, it is further agreed that the parties to this agreement shall not bring a putative or certified class-action to arbitration, nor seek to enforce any pre-disputed arbitration agreement against any person who has initiated in court a putative class-action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any right under this agreement except to the extent stated herein.

13. I authorize U.S. Clearing to obtain a consumer report at the time of application [illegible]

I authorize U.S. Clearing to obtain a consumer report at the time of application to verify my creditworthiness and to obtain a consumer report from time to time for updates, renewals, extensions, and collection activity on any approved account. Upon my written request, U.S. Clearing will disclose to me whether it obtained a report, and if so, the name and address of the consumer-reporting agency that provided it. In the event that my account is denied, as a result of the consumer report verification, I authorize U.S. Clearing to provide to my introducing broker the reason(s) for such denial.

## LENDING AGREEMENT

14. You and any firm succeeding to your firm are hereby authorized from time to lend separately or together with the property of others either to yourselves or to others any property which you may be carrying for me on margin. This authorization shall apply to all accounts carried by you for me and shall remain in full force until written notice or revocation is received by you at your principal office in New York.

**BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THE FOLLOWING: (1) THAT, IN ACCORDANCE WITH PARAGRAPH #11 I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH YOU, AND (2) RECEIPT OF A COPY OF THIS AGREEMENT.**

| | |
|---|---|
| (applicant's signature) | (signature of co-applicant) |
| Date ______ | Date ______ |

US 101C (Rev. 11/00) Part One - N.Y. Office Part Two - Customer